UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MAINE

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| **GREGORY M. KIRBY** and | ) | Chapter 7 |
| **AMANDA S. KIRBY**, | ) | |
| | ) | Case No.: 14-20682 |
| Debtor. | ) | |
| | ) | |
| | ) | |
| **GREGORY M. KIRBY**, | ) | |
| | ) | Adv. Proc. No.: 17-2007 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| **21st MORTGAGE** | ) | |
| **CORPORATION**, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**MEMORANDUM OF DECISION**

This matter comes before the court on the motion for summary judgment by defendant 21st Mortgage Corporation ("21st Mortgage"). Plaintiff Gregory Kirby alleges that certain post-petition written communications to his wife and him from 21st Mortgage and the filing of a pleading in a state court foreclosure action against them violate the bankruptcy discharge injunction, 11 U.S.C. §524(a)[1], and the Fair Debt Collections Practices Act ("FDCPA"), 15 U.S.C. § 1692. 21st Mortgage maintains that there are no material disputes of fact as respects those issues and that it is entitled to judgment as a matter of law. For the reasons set forth below, 21st Mortgage's motion shall be granted.

---

[1] Subsequent references to statutory section numbers in this memorandum are to the Bankruptcy Reform Act of 1978, as amended, 11 U.S.C. §101 et seq. (the "Code").

1

**I. Jurisdiction and Venue.**

This court has jurisdiction over the subject matter and the parties pursuant to 28 U.S.C. §§ 157(a), 1334, and United States District Court for the District of Maine Local Rule 83.6(a). This is a core proceeding under 28 U.S.C. § 157(b)(2)(A). Venue here is appropriate pursuant to 28 U.S.C. §§ 1408 and 1409.

**II. Facts.**[2]

1. On July 11, 2007, the Kirbys executed and delivered a promissory note (the "Note") in the sum of $218,450.00 to Homecomings Financial, LLC.

2. The Note was secured by a mortgage (the "Mortgage") on real estate located at 61 Oak Grove Drive, Brewer, Penobscot County, Maine and the Mortgage is recorded in Book 11046, Page 191 of the Penobscot County Registry of Deeds.

3. The Mortgage was modified by an agreement effective as of February 1, 2010, which established a new principal balance of $234,657.02.

4. On or about June 20, 2014, the 21st Mortgage filed a foreclosure complaint in the Penobscot County Superior Court against the Kirbys and an initial mediation in the Kirby foreclosure was scheduled for August 28, 2014.

5. The Kirbys filed a petition for relief under chapter 7 of the Code the afternoon before the scheduled mediation.[3]

6. In their bankruptcy petition and schedules, the Kirbys indicated their intent to "retain" their "former residence" located at 61 Oak Drive, Brewer, Maine, and that they further "intend to explore modification."

7. The Kirbys did not reaffirm the debt to 21st Mortgage.

8. The Kirbys received their chapter 7 discharges on December 4, 2014.

9. On or about December 6, 2014, 21st Mortgage and its counsel received notice of the Kirbys' discharge.

10. By letter dated December 11, 2014, 21st Mortgage mailed a mortgage statement, addressed to Mr. Kirby in the care of the Kirbys' bankruptcy counsel, as follows:

---

[2] These facts are undisputed unless indicated otherwise.

[3] The Kirbys were represented by the same attorney throughout their chapter 7 case.

2

    GREGORY M KIRBY

    C/O SCOTT LOGAN

    75 PEARL ST #212

    PORTLAND ME 04101-4101

11. Among other things, this mortgage statement stated an "Amount Due" of $98,056.45 in bold in two places on page 1. It also stated in two places that a late fee of $63.66 would be charged if the payment were not received by a certain date. Near the top of page 1, the following language appeared in bold: "**See Reverse Side for Important Information**". Among other things, page 2 contained two notices (the "Collection Disclaimer" and the "Bankruptcy Disclaimer, respectively):

    This is an attempt to collect a debt and any information obtained will be used for that purpose.

    \* \* \*

    **NOTICE:** Please be advised further that this letter constitutes neither a demand for payment of the captioned debt nor a notice of personal liability to any recipient hereof who might have received discharge of such debt in accordance with applicable bankruptcy laws or who might be subject to automatic stay of Section 362 of the United States Bankruptcy Code. This letter is being sent to any such parties merely to comply with applicable state law governing foreclosure of liens pursuant to contractual powers of sale.

12. 21st Mortgage mailed a letter dated January 8, 2015, addressed to Mr. Kirby in the care of his counsel, regarding changes in the adjustable rate mortgage. Among other information, this letter included a chart showing the current and estimated new interest rate and monthly payments, a new monthly payment amount due on February 1, 2015 ($1,760.95 – a $44.91 increase), the loan balance, and the remaining loan term. The letter also contained the Collection Disclaimer but did not include the Bankruptcy Disclaimer.

13. 21st Mortgage mailed eight additional mortgage statements dated January 13, 2015, February 10, 2015, March 10, 2015, April 10, 2015, June 10, 2015, July 13, 2015, August 11, 2015 and September 14, 2105.  All were addressed to Mr. Kirby in the care of his counsel. All of these statements were nearly identical to the December 11, 2014 statement and they all included the Collection and Bankruptcy Disclaimers quoted above in paragraph 11.

14. 21st Mortgage mailed an annual private mortgage insurance disclosure dated January 23, 2015 addressed to Mr. Kirby in the care of his counsel. This letter included the Collection and Bankruptcy Disclaimers.

15. The parties attended a mediation of the foreclosure matter on February 26, 2015.

3

16. In response to the Kirbys' Request for Mortgage Assistance (RMA) application to modify their mortgage payments, 21st Mortgage mailed a letter dated April 6, 2015, addressed to the Kirbys in the care of their counsel, which confirmed receipt of the Kirbys' application and requested additional documents.

17. 21st Mortgage mailed a letter dated April 28, 2015, addressed to the Kirbys in the care of their counsel, which, among other things, confirmed the receipt of an updated RMA, and requested additional documents in order to process the Kirbys' application.

18. In response to the Kirbys' submission of supplemental RMA information, 21st Mortgage mailed a letter dated May 8, 2015, addressed to the Kirbys in the care of their counsel, which confirmed the receipt of profit and loss statements and requested additional documents in order to process the Kirbys' application.

19. A third mediation was scheduled for May 14, 2015.

20. In response to the Kirbys' submission of additional RMA information, 21st Mortgage mailed a letter dated May 26, 2015, addressed to the Kirbys in the care of their counsel, which confirmed receipt of their completed initial package and application. The letter indicated that 21st Mortgage was in the process of reviewing the Kirbys' application.

21. A fourth mediation was scheduled for June 9, 2015.

22. 21st Mortgage mailed a letter dated June 15, 2015, addressed to the Kirbys in the care of their counsel, which stated that they did not qualify for a loan modification.

23. 21st Mortgage mailed a letter dated July 16, 2015, addressed to Mr. Kirby in the care of his counsel, regarding Mr. Kirby's request for a short sale.

24. 21st Mortgage filed a pleading dated July 25, 2016 in the state court foreclosure action which stated in part: "Defendants are already liable for costs and attorney fees associated with the enforcement of the note and mortgage."[4]).

25. The parties participated in another mediation session on August 12, 2015 during which Mr. Kirby requested an appeal of the July 14, 2015 denial letter.

26. 21st Mortgage mailed a letter dated August 13, 2015, addressed to the Kirbys in the care of their counsel, regarding Mr. Kirby's appeal request.

27. 21st Mortgage mailed a letter dated September 10, 2015, addressed to the Kirbys in the care of their counsel, which responded to the Kirbys' request for reconsideration of 21st Mortgage's denial of the loan modification request.

---

[4] Mr. Kirby made this allegation in ¶ 23 of his complaint. 21st Mortgage denied that allegation in its answer however, in its motion for summary judgment and incorporated memorandum of law it admitted that it filed that pleading in connection with the state court foreclosure action. Therefore, this court is treating this as an admitted fact in connection with 21st Mortgage's summary judgment motion.

4

28. The letters dated April 6, 2015, April 28, 2015, May 8, 2015, May 26, 2015, June 15, 2015, July 16, 2015, August 13, 2015 and September 10, 2015 all contained the Collection Disclaimer and the entire Bankruptcy Disclaimer, except for the final sentence (the "Modified Bankruptcy Disclaimer"): "This letter is being sent to any such parties merely to comply with applicable state law governing foreclosure of liens pursuant to contractual powers of sale".

29. A sixth mediation was held on October 2, 2015, at which time the foreclosure case was returned to the active state court docket.

30. Soon after, Mr. Kirby's counsel mailed a letter dated October 6, 2015 to 21st Mortgage at a Memphis, Tennessee post office box indicating, among other things, that the company's September 14, 2015 mortgage statement mailed to Mr. Kirby, in the care of his counsel, violated the discharge injunction. The letter also stated in bold font: "**Please refrain from any further contact with the Debtor**."

31. By letter dated January 4, 2016[5], 21st Mortgage's counsel, Eleanor Dominguez, mailed a letter to the Kirbys at their Saco address indicating that their counsel gave her permission to contact them directly in connection with their foreclosure lawsuit (the "Cash-for-Keys Letter"). This letter provided, in part:

    Your former attorney, J. Scott Logan, Esq., has given me permission to contact you directly in this foreclosure action. As you know, mediation efforts in this matter were unsuccessful and the above referenced matter will likely be scheduled for trial soon. At trial, my client, MidFirst Bank, will seek a foreclosure judgment. In Maine, lenders may seek borrowers for any deficiency between the ultimate sales price of a foreclosed property and the fair market value of the same. Because you have both been discharged in bankruptcy, my client would like to offer you a Consent Judgment with a waiver of deficiency and Cash-for-Keys assistance rather than proceed to trial. For MidFirst, it saves the time and expense of a trial. For you, you do not have to worry about ever being pursued for a deficiency and you will receive up to $1,000.00 payable after foreclosure sale and inspection, if you agree to the conditions set forth in the attached Cash-for-Keys Agreement.

    Neither the Collection nor the Bankruptcy Disclaimers were included in this letter.

32. 21st Mortgage's counsel mailed letters dated March 7, 2016 to the Kirbys at their Saco and Brewer, Maine addresses which stated that they were in default on their mortgage payment obligations, that they could cure the defaults by making certain payments, that 21st Mortgage intended to foreclosure on the mortgage if they did not cure their default, that 21st Mortgage was entitled to collect all reasonable costs and expenses incurred pursuing its remedies in accordance with the mortgage and Maine law, and that they had

---

[5] 21st Mortgage asserts that this letter and the November 2, 2016 letter described in ¶ 34 are not properly before the court because the affidavits upon which Mr. Kirby attempted to present them are defective. This argument is addressed below in the Analysis section of this opinion.

5

various options other than foreclosure (collectively referred to as the "Default Letter"). The Default Letter contained the following language at the bottom of the third page in a smaller, bold font:

> To the extent your original obligation was discharged, or is subject to an automatic stay of bankruptcy under Title 11 of the United States Code, this notice is for compliance and/or information purposes only and does not constitute an attempt to collect a debt or to impose personal liability for such obligation. However, a secured party retains rights under its security instrument, including the right to foreclose its lien.

33. 21st Mortgage mailed to Mr. Kirby, in the care of his counsel, an annual escrow account disclosure dated August 1, 2016. This disclosure listed the "CURRENT PAYMENT INFORMATION" and "YOUR NEW PAYMENT INFORMATION". It also showed the escrow account activity for the current year and a projection for the next year. Further, the letter contained the following:

> Please be advised further that this letter constitutes neither a demand for payment of the captioned debt nor a notice of personal liability to any recipient hereof who might have received discharge of such debt in accordance with applicable bankruptcy laws or who might be subject to automatic stay of Section 362 of the United States Bankruptcy Code.

34. On October 10, 2016, the Penobscot County (Maine) Superior Court entered a judgment of foreclosure and order of sale in favor of 21st Mortgage. The judgment provided in part:

> Judgment and execution shall enter and issue against Defendants [the Kirbys] for any deficiency provided that the statutory requirements are met. Provided, however, that in the event that Defendants have either currently filed for protection or have been discharged under provisions of the U.S. Bankruptcy Code then no judgment or execution shall issue against Defendants for any deficiency.

35. 21st Mortgage mailed another annual private mortgage insurance disclosure dated November 2, 2016 addressed to Mr. Kirby in the care of his counsel. This letter included the Collection and the Bankruptcy Disclaimers.

36. On February 27, 2017, the property located at 61 Oak Grove Drive, Brewer, Maine was sold at foreclosure auction sale.

### III. Legal Standards

#### A. The Summary Judgment Standard.

Summary judgment is appropriate when there is no genuine issue as to any material fact so that the moving party is entitled to judgment as a matter of law. See F.R. Civ. P. 56(a);

Thompson v. Coca-Cola Co., 522 F.3d 168, 175 (1st Cir. 2008). A fact is material if it has the potential of determining the outcome of the litigation. Id. The court reviews the pleadings and considers the facts in the light most favorable to the non-moving party. However, "[i]t is settled that the nonmovant may not rest upon mere allegations, but must adduce specific, provable facts demonstrating that there is a triable issue." Brennan v. Hendrigan, 888 F.2d 189, 191 (1st Cir. 1989).

### B. Discharge Violations

In most bankruptcies, obtaining a discharge of indebtedness is the supreme goal of the endeavor. The Supreme Court emphasized its importance over eighty years ago:

> One of the primary purposes of the Bankruptcy Act is to 'relieve the honest debtor from the weight of oppressive indebtedness, and permit him to start afresh free from the obligations and responsibilities consequent upon business misfortunes.' Williams v. U.S. Fidelity & Guaranty Co., 236 U.S. 549, 554, 555, 35 S.Ct. 289, 290, 59 L.Ed. 713. This purpose of the act has been again and again emphasized by the courts as being of public as well as private interest, in that it gives to the honest but unfortunate debtor who surrenders for distribution the property which he owns at the time of bankruptcy, a new opportunity in life and a clear field for future effort, unhampered by the pressure and discouragement of pre-existing debt.

Local Loan Co. v. Hunt, 292 U.S. 234, 244–45, 54 S. Ct. 695, 699, 78 L. Ed. 1230 (1934) (collecting cases).

Section § 524(a)(2) protects the discharge and provides a permanent "injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived". In order to prove a violation of the discharge injunction, a debtor must show that the defendant (1) had notice of the discharge, (2) intended the actions which violated the discharge, and (3) acted in a way that improperly coerced or harassed the debtor. Bates v. CitiMortgage, Inc., 844 F.3d 300, 304 (1st Cir. 2016). As to the third element, the defendant's conduct must be "improperly coercive or harassing under an objective standard – the debtor's

7

subjective feeling of coercion or harassment is not enough." Id. "While there is no 'specific test to determine whether a creditor's conduct meets this objective standard,' the circuit considers 'the facts and circumstances of each case, including factors such as the immediateness of any threatened action and the context in which a statement is made.' . . . An action is coercive when it is 'tantamount to a threat,' or places the debtor 'between a rock and a hard place' in which he would lose either way." Rosado v. Banco Popular De Puerto Rico, 561 B.R. 598, 605 (B.A.P. 1st Cir. 2017) (internal citations omitted). Although the reach of the discharge injunction is broad, it does not prevent all communications between a creditor and debtor – "'only those designed to collect, recover or offset any such debt as a personal liability of the debtor.'" Best v. Nationstar Mortg. LLC (In re Best), 540 B.R. 1, 9 (B.A.P. 1st Cir. 2015) (citations omitted).[6]

### IV. Analysis.

Mr. Kirby commenced this adversary proceeding on March 9, 2017 and he alleges that the post-petition communications he received from 21st Mortgage are attempts to collect a debt in violation of § 524, and are unlawful debt collection practices under the FDCPA. He also alleges 21st Mortgage violated the discharge injunction by a July 25, 2016 state court pleading which stated: "Defendants are already liable for costs and attorney fees associated with the enforcement of the note and mortgage." 21st Mortgage asserts that its actions did not contravene the discharge injunction or the FDCPA and that summary judgment should enter in its favor.

#### a. Count I – Violations of the Discharge Injunction.

Because there is no dispute that 21st Mortgage received notice of Mr. Kirby's discharge and intended the actions which Mr. Kirby alleges violate § 524(a)(2) (sending the twenty-three

---

[6] For a more extensive examination of the discharge injunction standard, please see Rosado, 561 B.R. at 605 – 606 and McConnie Navarro v. Banco Popular De Puerto Rico (In re McConnie Navarro), 563 B.R. 127, 140 - 141 (Bankr. D.P.R. 2017).

8

post-discharge written communications and filing of a state court foreclosure pleading), the only unresolved question is whether this conduct was "improperly coercive or harassing under an objective standard". The post-discharge communications fall into several groups: (a) nine monthly mortgage statements, (b) seven RMA application correspondences, and (c) one each of an adjustable rate mortgage notification, an annual escrow statement, a short sale proposal, the Cash-for-Keys Letter, and the Default Letter.[7] Some of the communications were addressed to Mr. Kirby only while others were addressed to Mr. and Mrs. Kirby. All of them except two, the Cash-for-Keys Letter and the Default Letter, were addressed to Mr. Kirby or both Kirbys in the care of their attorney. Each letter included some type of bankruptcy disclaimer similar, if not identical, to the Bankruptcy Disclaimer included in the December 11, 2014 letter. Only three of them – the Cash-for-Keys Letter, the Default Letter, and the November 2, 2016 private mortgage insurance disclosure letter – were sent after the Kirbys' counsel's October 6, 2015 demand that 21st Mortgage refrain from any further contact with Mr. Kirby.

1. **The Nine Monthly Mortgage Statements and the RMA, short sale, Adjustable Rate Mortgage and Escrow correspondence.**

Various bankruptcy courts in this circuit have examined what constitutes a discharge violation when a mortgagee communicates with a mortgagor after discharge. There is no bright line test and each analysis requires an examination of the circumstances and context in which the communications occur. For instance, in Todt v. Ocwen Loan Servicing (In Re Todt), 567 B.R. 667 (Bankr. D.N.H. 2017), the mortgagee sent twenty-one post-discharge monthly mortgage statements directly to the debtors. These statements included demands for all amounts due, not

---

[7] The post-discharge written communications also included Private Mortgage Disclosures but, to the extent that Mr. Kirby relies upon these letters to support his claim of a discharge injunction violation, that reliance is misplaced. Neither of those two communications states that any amount is due or a date upon which such payment must be made.

9

just periodic payments. Each statement was identical except the total amount due kept increasing with each letter. Notwithstanding the inclusion of bankruptcy disclaimer language on each statement, the court concluded that these statements improperly coerced and harassed the debtors in violation of the discharge injunction.

> The totality of Ocwen's communications on and after April 12, 2012, with the exception of communications in connection with the enforcement of its in rem rights under the mortgage, reflected no recognition of the issuance of the bankruptcy discharge. All such communications expressly and implicitly reflect attempts to collect discharged obligations from the Debtors. No pro forma bankruptcy disclaimer can overcome the effects of repeated and continuous communications in which Ocwen took the position that these obligations were collectible. The use of a pro forma bankruptcy disclaimer is not a "get out of jail free" card that can absolve a creditor of liability for a pattern of conduct that is inconsistent with the terms of the disclaimer itself.

Id. at 679.

However, in In re Lemieux, in the context of a motion to dismiss, the court held that monthly mortgage statements sent directly to the debtors did not constitute discharge violations even though they included financial summary sections, which listed the current monthly payments, unpaid payments, late charges, total payments and payment coupons. Lemieux v. America's Servicing Co. (In re Lemieux), 520 B.R. 361 (Bankr. D. Mass. 2014). The court was persuaded that the omission of the word "due", the presence of multiple bankruptcy disclaimers (a total of three on each monthly statement when the payment coupon disclaimer was included) and the inclusion of language that the statements were being sent for informational purposes created a context in which even a hypothetical unsophisticated consumer would know that the statements were not attempts to collect a debt. Id. at 366. The Lemieux court also held that interest rate change letters, which informed the debtors that their loan amounts, interest rates and payments would change and which included bankruptcy and collection disclaimers, did not amount to a discharge violation, in part, because there was no demand for payment. Id. at 367 -

10

368. However, the court noted that the hazard insurance letters stated that the mortgagee obtained forced place insurance and the debtors must obtain their own insurance or their escrow account would be charged for the protection. Id. The insurance mailing did not, unlike the mortgage statements, indicate that it was for information purposes only and did not have a bankruptcy disclaimer. The court found these distinctions meaningful and concluded that the insurance letter violated the discharge injunction. Id.

In McConnie Navarro, the court held that eleven monthly mortgage statements sent directly to the debtor did not run afoul of the protections in § 524(a) in large part because all of the notices contained disclosures that specifically acknowledged the debtor's bankruptcy filing and stated that they were not attempts to collect debts and that they were sent for informational purposes only. Further, all of the places indicating the monthly payment, additional principal, additional escrow, late fees and other charges were left blank. McConnie Navarro, 563 B.R. at 146–47.

Perhaps not surprisingly, given that all of these cases involved different lenders, the monthly mortgage statements sent by 21st Mortgage to the Kirbys do not neatly match those sent by the lenders in Todt, Lemieux or McConnie Navarro. For instance, 21st Mortgage's statements contain the Collection Disclaimers, which state that they are attempts to collect a debt, unlike the statements in McConnie Navarro. They do not announce that they are for informational purposes only and they do contain due dates, late fees and an ever-increasing total amount due, unlike the lender in Lemieux. The mortgage statements sent to Mr. Kirby in the care of his lawyer might be confusing to a layperson. They clearly state an amount due and a due date. They threaten that a late fee will be added if payments are not made by the middle of the month. They state that they are attempts to collect a debt. On the other hand, the late fees

11

were never added to the balance due and each statement contains the Bankruptcy Disclaimer, which, though not ideal, does inform the recipient who has been discharged in bankruptcy that 21st Mortgage is not attempting to collect a debt or to hold the addressee personally responsible for the mortgage debt.  The Bankruptcy Disclaimer is less direct than that of the lenders in McConnie Navarro case whose bankruptcy disclaimers affirmatively stated that the debtor in question had filed for bankruptcy relief.   McConnie Navarro, 563 B.R. at 145. The disclaimers sent by 21st Mortgage are conditional – they generally state that the mortgage statement is not a demand for payment or a notice of personal liability to any recipient who might have received a discharge.

However, unlike the creditors in the three cases mentioned above, 21st Mortgage communicated to the debtor by sending the mortgage statements to Mr. Kirby, in the care of his lawyer - an experienced bankruptcy practitioner - during the course of ongoing loan modification negotiations and communications.  Also, 21st Mortgage stopped sending the statements to Mr. Kirby (in the care of his counsel) immediately following his counsel's letter of October 6, 2015. Given that 21st Mortgage filtered its communication of the mortgage statements, which included the Bankruptcy Disclaimer, through Mr. Kirby's bankruptcy counsel who could easily have allayed any concerns his client may have had that these letters were collection efforts, this court concludes that the cumulative effect of the mortgage statements was not coercive, harassing, or "tantamount to a threat", See Jamo v. Katahdin Fed. Credit Union (In re Jamo), 283 F.3d 392, 402 (1st Cir. 2002).  Further, the fact that Mr. Kirby's counsel waited approximately ten months before he requested that 21st Mortgage cease sending the monthly statements contributes to the

conclusion that even he did not perceive the statements to be any danger or threat to his client. As such, these twenty-one letters do not constitute discharge injunction violations.[8]

Similarly, the RMA, short sale, Adjustable Rate Mortgage and Escrow correspondence were all sent to Mr. Kirby or Mr. and Ms. Kirby, in the care of their attorney. In addition, some of them, such as the RMA and short sale letters, were sent during a time when the Kirbys were voluntarily engaged in settlement negotiations or the state court foreclosure diversion program which required communication by and between 21st Mortgage and the Kirbys' counsel about the Kirbys' options to address their obligations to 21st Mortgage. And, although some of the correspondence, such as the Adjustable Rate Mortgage and Escrow disclosures, stated that certain payments would come due, given the subject matter of these letters and the fact that they were all sent directly to the Kirbys' bankruptcy counsel leads this court to conclude these communications did not violate the discharge injunction.[9]

## 2. Cash-for-Keys and Default Letters.

This leaves two communications left for consideration: the Cash-for-Keys Letter and the Default Letter. The former is before the court only by virtue of being referred to in Mr. Logan's Affidavits filed on October 20, 2017 and October 27, 2017 (DE 40-2 and 42, respectively) and in ¶ 2 of Mr. Kirby's affidavit dated October 17, 2017 (DE 40-3). First, there are several problems with the affidavits of both Mr. Logan and Mr. Kirby and, therefore, with the admissibility of that

---

[8] 21st Mortgage argues that it was permitted to send the monthly mortgage states pursuant to 12 CFR § 1026.41(e)(5)(i)(A). The court need not reach this argument but does note that this provision contains an exception with respect to borrowers who have received a discharge in bankruptcy.

[9] Although 21st Mortgage argued that lenders of federally related mortgage loans are required to send escrow account disclosure statements to borrowers every year, 12 C.F.R. § 1024.17(a), they were relieved of that requirement by 12 C.F.R. § 1024.17(i)(2) which provides: "If at the time the servicer conducts the escrow account analysis the borrower is more than 30 days overdue, then the servicer is exempt from the requirements of submitting an annual escrow account statement to the borrower under § 1024.17(i). This exemption also applies in situations where the servicer has brought an action for foreclosure under the underlying federally related mortgage loan, or where the borrower is in bankruptcy proceedings."

13

letter . Nowhere in any of the three affidavits does it indicate that either Mr. Logan or Mr. Kirby has personal knowledge of any of the statements contained therein as required by Fed. R. Civ. P. 56(c)(4), made applicable by Fed. R. Bankr. P. 7056 ("An affidavit or declaration used to support or oppose a motion [for summary judgment] must be made on personal knowledge") (underline added).  "Although Rule 56 has been liberally construed with respect to admissibility of [an] affidavit's contents on summary judgment, its requirement of personal knowledge by affiant is unequivocal and cannot be circumvented."  United States v. Valore, 152 F.R.D. 1, 2 (D. Me. 1993).  *See also*, Perez v. Volvo Car Corp., 247 F.3d 303, 315-316 (1st Cir. 2001) (describing the personal knowledge requirement as a "touchstone" and stating that, "the requisite personal knowledge must concern facts as opposed to conclusions, assumptions or surmise").  Without the essential personal knowledge component by the affiants – Mr. Logan and Mr. Kirby – these three affidavits are defective and thus, the Cash-for-Keys Letter is not properly before the Court on this motion for summary judgment. See, New Maine Nat'l Bank v. Liberty, 778 F. Supp. 86, 94 n. 11 (D. Me. 1991).

Further, even though Mr. Kirby's counsel signed his first affidavit electronically, the document contains an incomplete and unexecuted jurat.  As such, the document is not acknowledged and is therefore defective as an affidavit.  Cornelius v. Hondo Inc., 843 F.Supp. 1243, 1247-1248 (N.D. Ill. 1994) (determining affidavit was inadmissible where notary's jurat post-dated affiant's signature indicating that the affidavit was not signed in the presence of the notary public).  "Affidavits are only admissible 'if they are made under penalties of perjury; . . . unsworn documents purporting to be affidavits may be rejected.'" Id. (*quoting*, Pfeil v. Rogers, 757 F.2d 850, 859 (7th Cir. 1985), *cert. denied*, 475 U.S. 1107, 106 S.Ct. 1513, 89 L.Ed.2d 912 (1986).  Four days later, Mr. Kirby's counsel apparently attempted to remedy this error by

14

submitting a second affidavit (DE 42) which included a completed jurat indicating that the acknowledging person was an attorney admitted to practice in Maine.  Although the affidavit was dated October 20, 2017, the jurat indicated Mr. Kirby's counsel appeared before the acknowledging officer the day before, on October 19, 2017.  While this may be a simple oversight or an incorrect insertion of the actual date, no explanation has been provided and these anomalies undermine the validity of the jurat, the affidavit and thus the admissibility of the Cash for Keys Letter.

Finally, as to the Default Letter, it indicated a number of things.  It informed Mr. Kirby that he failed to make payments required by the Note and Mortgage, he was in default of his obligations to 21st Mortgage, if he failed to cure the default within a certain time period 21st Mortgage would sell his property at a foreclosure sale, and that 21st Mortgage would be entitled to collect fees, costs and expenses in accordance with the Mortgage and Maine law.  It also provided him with an itemization of the total amounts past due and owing and informed him of options other than foreclosure.  As noted in the facts above, a bankruptcy disclaimer appears at the bottom of page 3 in bold, smaller font.

The vast majority of the letter contains information that a foreclosing mortgagee must, under Maine law, include in a default or right to cure letter.  For example, prior to commencing a foreclosure of the principal residence of a mortgagor, the mortgagee must provide written notice to the mortgagor of certain specific information required by the mortgage and by statute.  14 M.R.S.A. § 6111(1-A); Bordetsky v. JAK Realty Tr., 2017 ME 42, ¶ 6, 157 A.3d 233, 237 (Me. 2017); §§ 13.4.1, 13.4.2 A Practical Guide to Residential Real Estate Transactions and Foreclosures in Maine (2016) 2013 WL 10448791.  Failure to strictly comply with these requirements invalidates the foreclosure.  JPMorgan Chase Bank, N.A. v. Lowell, 2017 ME 32, ¶

15

21, 156 A.3d 727, 734 (Me. 2017). Thus, in order for 21st Mortgage to protect the in rem rights that §524 recognizes and preserves, it was required to send the Default Letter. Though not binding on this Court, the analysis of this same issue in the following cases is persuasive. See, Mele v. Bank of America Home Loans (In re Mele), 486 B.R. 546, 558 (Bankr. N.D. Ga. 2013); In re Gill, 529 B.R. 31, 42 (Bankr. W.D.N.Y. 2015). As such, the Default Letter does not violate the discharge injunction.

### b. Count II –Violations of the Fair Debt Collections Practices Act.

In Count II of Mr. Kirby's adversary proceeding complaint, he alleges that 21st Mortgage's actions violated the FDCPA. This count fails as a matter of law because 21st Mortgage is not a "debt collector" under the FDCPA.

The FDCPA governs the actions of debt collectors. It defines a "debt collector" as a person whose principal business purpose is debt collection or who regularly collects debts owed to someone or something else. 15 U.S.C. § 1692(a). As the United States Supreme Court recently noted: "[a]nd by its plain terms this language seems to focus our attention on third party collection agents working for a debt owner—not on a debt owner seeking to collect debts for itself." Henson v. Santander Consumer USA Inc., 137 S. Ct. 1718, 1721, 198 L. Ed. 2d 177, 181, 2017 (2017) (Holding that the definition of a debt collector under the FDCPA does not extend to a person who regularly purchases debts originated by someone else and then collects those debts for its own account). Although the circumstances of each case merit individual consideration, at least one other court which has been presented with this question has determined that 21st Mortgage is not a "debt collector" under the FDCPA. Hewitt v. 21st Mortg. Corp., Civ. No. 16-5719, 2017 U.S. Dist. LEXIS 131447, *6-7 (D. N.J. Aug. 15, 2017) ("21st Mortgage Corporation is a company primarily engaged in the business of loan origination. In

16

connection with that business, they can purchase debt, and attempt to collect on that debt, without acquiring the status of a "debt collector" and subjecting themselves to the regulations of the FDCPA. . . . Defendant [21st Mortgage Corporation] is not a debt collector under the FDCPA and is not required to abide by its regulations in communications with debtors."). There is no dispute that 21st Mortgage originated the debt to the Kirbys which it attempted to collect and which was the subject of its communications and foreclosure pleadings. Mr. Kirby tries to thwart the fatal consequence of that fact by pointing out that following the foreclosure sale, 21st Mortgage conveyed the property at 61 Oak Grove Drive in Brewer by quitclaim deed to itself. Plaintiff's Opposing Statement of Material facts, ¶59. This is of no consequence. The fact that 21st Mortgage effectuated that transfer does nothing to undermine the undisputed fact that 21st Mortgage's actions involved Mr. Kirby's obligations to it, not to a third party.

For these reasons, 21st Mortgage Corporation is not a "debt collecter" under the FDCPA and its communications did not violate that act.

### V. Conclusion.

21st Mortgage did communicate with Mr. Kirby and his wife following the entry of a discharge in his bankruptcy cases. However, the vast majority of the written communications which were properly presented to the court on 21st Mortgage's motion for summary judgment were sent to Mr. Kirby's bankruptcy counsel and given the context of those communications they do not objectively constitute coercive or harassing actions in violation of the protections of the discharge injunction. Of the two communications which were sent directly to the Kirbys, only one – the Default Letter – was appropriate for this court to consider upon the motion for summary judgment. For the reasons set forth above, the Default Letter was not a violation of the

17

discharge injunction either. Therefore, 21st Mortgage's motion for summary judgment will be granted.