**FOR PUBLICATION**

# UNITED STATES BANKRUPTCY APPELLATE PANEL
# FOR THE FIRST CIRCUIT
_____

**BAP NO. EP 18-024**
_____

**Bankruptcy Case No. 14-20682-PGC**
**Adversary Proceeding No. 17-02007-PGC**
_____

**GREGORY M. KIRBY and**
**AMANDA KIRBY,**
**Debtors.**
_____

**GREGORY M. KIRBY,**
**Plaintiff-Appellant,**

**v.**

**21ST MORTGAGE CORPORATION,**
**Defendant-Appellee.**
_____

**Appeal from the United States Bankruptcy Court**
**for the District of Maine**
**(Hon. Peter G. Cary, U.S. Bankruptcy Judge)**
_____

**Before**
**Godoy, Harwood, and Katz,**
**United States Bankruptcy Appellate Panel Judges.**
_____

**J. Scott Logan, Esq., on brief for Plaintiff-Appellant.**
**Eleanor L. Dominguez, Esq., on brief for Defendant-Appellee.**
_____

**May 14, 2019**
_____

**Katz, U.S. Bankruptcy Appellate Panel Judge.**

Gregory M. Kirby ("Mr. Kirby") appeals from the bankruptcy court's order (the "Order") granting summary judgment in favor of 21st Mortgage Corporation ("21st Mortgage") on his complaint alleging that post-discharge communications from 21st Mortgage were attempts to collect a discharged debt in violation of § 524(a)(2)'s discharge injunction and the Fair Debt Collections Practices Act ("FDCPA").[1]  Mr. Kirby asserts that the bankruptcy court erred in granting summary judgment in favor of 21st Mortgage because: (1) there were genuine issues of material fact which required a trial; and (2) 21st Mortgage failed to establish that its post-discharge correspondence did not violate the discharge injunction as a matter of law.[2]  Discerning no error, we **AFFIRM**.

<u>**BACKGROUND**</u>

The following facts are undisputed.[3]

Mr. Kirby and his wife (the "Kirbys") previously owned real property in Brewer, Maine (the "Brewer Property"), subject to a mortgage lien securing a promissory note held by 21st Mortgage.  When the Kirbys defaulted on their obligations under the note, 21st Mortgage

---

[1]  All references to specific statutory sections are to the Bankruptcy Reform Act of 1978, as amended, 11 U.S.C. §§ 101, et seq.  (the "Bankruptcy Code" or the "Code").  All references to "Bankruptcy Rule" are to the Federal Rules of Bankruptcy Procedure and all references to "Rule" are to the Federal Rules of Civil Procedure.

[2]  As discussed later, because Mr. Kirby presented no argument in his appellate brief regarding the bankruptcy court's grant of summary judgment on the FDCPA claim, he has waived that issue and it is not before us in this appeal.  See Scope of Appeal, infra.

[3]  The facts set forth in this section are gleaned from the undisputed facts articulated by the bankruptcy court in the Order, and the Joint Stipulations of Fact submitted by the parties.

commenced a state court foreclosure action against them, and the case was promptly transferred to the Foreclosure Diversion Program.[4]

The day before the initial mediation session scheduled for August 28, 2014, the Kirbys commenced a voluntary bankruptcy case by filing a petition under chapter 7 of the Bankruptcy Code. In their bankruptcy schedules, the Kirbys disclosed their interest in the Brewer Property[5] and listed 21st Mortgage as the holder of a $343,619 claim secured by a lien on the Brewer Property. The Kirbys' schedules also reflected their intent to retain the Brewer Property and "to explore modification." The Kirbys did not reaffirm the debt to 21st Mortgage. They received chapter 7 discharges pursuant § 727(a) (relieving them of personal liability for the debt to 21st Mortgage) on December 4, 2014. As 21st Mortgage concedes, it received notice of the entry of the Kirbys' discharges, and the bankruptcy case was closed shortly thereafter.

After the entry of the Kirbys' discharges, the parties resumed mediation under the state court Foreclosure Diversion Program. Between December 2014 and October 2015, the parties engaged in extensive efforts to mediate an alternative to foreclosure. During this ten-month period, the parties participated in three court-sponsored mediation sessions, and the Kirbys pursued other loss mitigation options with 21st Mortgage. Ultimately, the parties were unable to reach a resolution and the case was returned to the foreclosure docket. In October 2016, the state court entered a judgment of foreclosure in favor of 21st Mortgage, and the Brewer Property was sold at a foreclosure auction in February 2017.

---

[4] The Foreclosure Diversion Program in Maine offers eligible homeowners the opportunity to participate in court-sponsored mediation sessions with their lenders to discuss alternatives to foreclosure litigation. See Me. Rev. Stat. Ann. tit. 14, § 6321-A.

[5] The Kirbys identified the Brewer Property as their "former residence." On their petition, they listed a current residential address in Saco, Maine.

But matters did not end there. In March 2017, the bankruptcy case was reopened at Mr. Kirby's request and Mr. Kirby filed a two-count complaint seeking damages against 21st Mortgage on account of his claims that post-discharge written correspondence sent by 21st Mortgage regarding the defaulted loan violated the discharge injunction imposed by § 524(a)(2) of the Code and certain provisions of the FDCPA.

## I.      Events and Correspondence During the Mediation Period

The majority of 21st Mortgage's post-discharge communications were sent between December 2014 and October 2015, while the parties were engaged in mediation and loss mitigation efforts (the "mediation period"). During this period, 21st Mortgage sent nineteen written communications—eight letters relating to Mr. Kirby's request for a loan modification, nine periodic mortgage statements, and two other "mortgage servicing" notices. All of these communications were addressed to Mr. Kirby in the care of his bankruptcy counsel, J. Scott Logan, at Attorney Logan's place of business.[6] The specific correspondence is described below.

### A.      Monthly Mortgage Statements

During the mediation period, 21st Mortgage sent nine monthly mortgage statements, each of which set forth an amount due and a due date, indicated that a late fee would be charged if the payment was not received, and included a payment coupon. At the top of the second page, the statements provided: "This is an attempt to collect a debt and any information obtained will be

---

[6]  All of these communications were addressed as follows:

GREGORY M KIRBY
C/O SCOTT LOGAN
75 PEARL ST #212
PORTLAND ME 04101-4101

used for that purpose." ("Collection Notice"). Each statement also contained the following

bankruptcy disclaimer:

> **NOTICE**: Please be advised further that this letter constitutes neither demand for
> payment of the captioned debt nor a notice of personal liability to any recipient
> hereof who might have received discharge of such debt in accordance with
> applicable bankruptcy laws or who might be subject to automatic stay of Section
> 362 of the United States Bankruptcy Code. This letter is being sent to any such
> parties merely to comply with applicable state law governing foreclosure of liens
> pursuant to contractual powers of sale.

### B.     ARM Notice

In January 2015, 21st Mortgage sent a notice (the "ARM Notice") regarding changes to

the interest rate on the adjustable rate mortgage. The notice included the current and estimated

new interest rates and monthly payments, a payment amount and due date, the loan balance, and

the remaining loan term. The letter contained a Collection Notice, but did not include a

bankruptcy disclaimer.[7]

### C.     PMI Disclosure

Also in January 2015, 21st Mortgage sent an annual private mortgage insurance

disclosure (the "PMI Disclosure"), informing Mr. Kirby of his rights under federal law regarding

the cancellation or termination of his private mortgage insurance. It contained a Collection

Notice and the same bankruptcy disclaimer as that contained in the mortgage statements.

### D.     Loss Mitigation Letters[8]

In April 2015, while mediation was ongoing, the Kirbys submitted a "Making Home

Affordable Program Request for Mortgage Assistance" application requesting a loan

modification (the "RMA application"). 21st Mortgage sent four letters relating to the application

---

[7]  This is the only communication sent by 21st Mortgage that did not contain a bankruptcy disclaimer.

[8]  Mr. Kirby does not argue that the loss mitigation communications described in this paragraph violated
the discharge injunction.

and a fifth letter informing the Kirbys that they did not qualify for a loan modification because
the Brewer Property was not their primary residence.  Then, in response to the Kirbys' request to
continue mediation and discuss further loss mitigation options, 21st Mortgage sent a letter
offering a short sale as a possible alternative to foreclosure.  After the Kirbys appealed the denial
of their RMA application, 21st Mortgage sent one letter acknowledging their appeal and another
reporting that it was upholding its decision.  All of these letters contained a Collection Notice
and a similar bankruptcy disclaimer:

> Please be advised further that this letter constitutes neither demand for payment of
> the captioned debt nor a notice of personal liability to any recipient hereof who
> might have received a discharge of such debt in accordance with applicable
> bankruptcy laws or who might be subject to automatic stay of Section 362 of the
> United States Bankruptcy Code.

("Bankruptcy Disclaimer").

## II.     Post-Mediation Correspondence

After mediation and loss mitigation efforts proved unsuccessful and the case was returned
to the foreclosure docket, Mr. Kirby's counsel sent a letter to 21st Mortgage dated October 6,
2015 asking 21st Mortgage to "refrain from any further contact with the Debtor" (the "Cease and
Desist Letter").  In that letter, Attorney Logan also maintained that 21st Mortgage violated the
discharge injunction by sending a mortgage statement dated September 14, 2015, but he did not
contend that any of the other 18 communications sent during the mediation period violated the
discharge injunction.  After receiving the Cease and Desist Letter, 21st Mortgage continued to
send written communications, although no communications related to the defaulted loan were
sent following the February 2017 foreclosure sale.

## A.     Escrow Account Disclosure, Short Sale Letter, and PMI Disclosure

Between October 2015 and November 2016, 21st Mortgage sent: (1) an annual escrow account disclosure statement (the "Escrow Account Disclosure") listing current and new payment information, the escrow account activity for the current year, and a projection for the next year; (2) a letter regarding a possible short sale as an alternative to foreclosure (the "Short Sale Letter"); and (3) another PMI Disclosure.  All of these communications included the Bankruptcy Disclaimer and were addressed to Mr. Kirby in the care of his counsel.  Both the PMI Disclosure and Short Sale Letter contained a Collection Notice, but the Escrow Account Disclosure did not.

## B.     The Cash-for-Keys Letter

On January 4, 2016, 21st Mortgage's counsel, Eleanor L. Dominguez, sent a letter directly to the Kirbys at their Saco address (the "Cash-for-Keys Letter").[9]  This was the first correspondence sent directly to the Kirbys.  The letter provided, in relevant part:

> Your former attorney, J. Scott Logan, Esq., has given me permission to contact you directly in this foreclosure action.  As you know, mediation efforts in this matter were unsuccessful and the above referenced matter will likely be scheduled for trial soon.  At trial, my client, MidFirst Bank,[[10]] will seek a foreclosure judgment.  In Maine, lenders may seek borrowers for any deficiency between the ultimate sales price of a foreclosed property and the fair market value of the same.  *Because you have both been discharged in bankruptcy*, my client would like to offer you a Consent Judgment with a waiver of deficiency and Cash-for-Keys assistance rather than proceed to trial.  For MidFirst, it saves the time and expense of a trial.  For you, you do not have to worry about ever being pursued for a deficiency and you will receive up to $1,000.00 payable after foreclosure sale and inspection, if you agree to the conditions set forth in the **attached** Cash-for-Keys Agreement.

---

[9]  The Cash-for-Keys Letter contained the following salutation: "Dear Gregory and Amanda . . . ."

[10]  The reference to "MidFirst Bank" appears to be a scrivener's error.

(emphasis added).  Although the letter did not contain a pro forma bankruptcy disclaimer, it acknowledged that the Kirbys had each received a bankruptcy discharge.  The letter was accompanied by a draft consent judgment of foreclosure and order of sale; however, the record reflects that Mr. Kirby's counsel did not include the draft judgment and order of sale in either the exhibits to the complaint or as part of the summary judgment record.

### C.      The Right to Cure Notice

In March 2016, Attorney Dominguez sent a Notice of Mortgagor's Right to Cure (the "Right to Cure Notice") to Mr. Kirby at both the Saco and Brewer addresses, notifying him that he was in default, that he could cure the default by making certain payments, and that 21st Mortgage intended to foreclose on the mortgage if he did not cure the default.  The Right to Cure Notice contained a Collection Notice and the following bankruptcy disclaimer on the last page:

> To the extent your original obligation was discharged, or is subject to an automatic stay of bankruptcy under Title 11 of the United States Code, this notice is for compliance and/or informational purposes only and does not constitute an attempt to collect a debt or to impose personal liability for such obligation. However, a secured party retains rights under its security instrument, including the right to foreclose its lien.

### D.      The State Court Pleading

In July 2016, 21st Mortgage filed a pleading in the state court foreclosure action (the "State Court Pleading"), which provided on the last page: "Defendants are already liable for costs and attorney's fees associated with the enforcement of the note and mortgage."  In the proceedings below, however, Mr. Kirby only submitted the final page of the State Court Pleading on which the allegedly objectionable language appeared and, therefore, the precise nature of the document and the context in which this statement appeared are not apparent from the summary judgment record.

## III.    The Adversary Proceeding

Mr. Kirby's complaint contained two counts.[11]  In Count I, he alleged that 21st Mortgage's post-discharge communications were coercive attempts to collect a debt in violation of the discharge injunction and that he was entitled to actual damages (including costs and attorney's fees) and punitive damages pursuant to § 105(a).  In Count II, Mr. Kirby asserted that 21st Mortgage's post-discharge communications were unlawful debt collection practices under the FDCPA.  In his prayer for relief, he asked for actual damages and a sanction of "up to $1,000.00 per violation[.]"

21st Mortgage filed a motion for summary judgment (the "Summary Judgment Motion"), asserting that there were no genuine issues of material fact and that, as a matter of law, its actions did not violate the discharge injunction.[12]  21st Mortgage acknowledged that it had notice of Mr. Kirby's discharge and had sent a total of 22 post-discharge communications regarding the defaulted loan,[13] but contended that none of those communications improperly harassed or coerced Mr. Kirby to pay a discharged debt in violation of the discharge injunction.

In his objection to the Summary Judgment Motion (the "Objection"), Mr. Kirby argued that 21st Mortgage, having notice of the entry of his discharge, sent at least nine and "possibly as

---

[11]  It is not apparent from the record or from the appellate briefs why Mrs. Kirby, who was a borrower under the note and a mortgagor on the mortgage, did not join in the complaint.

[12]  In support of the Summary Judgment Motion, 21st Mortgage submitted: (1) an affidavit by Jeff Warkins, Staff Attorney of 21st Mortgage; (2) an affidavit by 21st Mortgage's counsel, Eleanor L. Dominguez; and (3) Defendant's Statement of Material Facts.

[13]  21st Mortgage identified its post-discharge communications as follows: (1) nine monthly mortgage statements; (2) the ARM Notice; (3) two PMI Notices; (4) eight "loss mitigation letters"; (5) the Right to Cure Notice; and (6) the Escrow Account Disclosure.  21st Mortgage did not submit either the Cash-for-Keys Letter or the State Court Pleading, arguing that the State Court Pleading was inadmissible under the "judicial privilege doctrine," and the Cash-for-Keys Letter constituted an "offer of compromise" which was inadmissible under Fed. R. Evid. 408.

many as twenty-six" mortgage statements and "at least ten other communications" which "demanded payment" from him in violation of the discharge injunction.[14]  He did not raise any factual disputes regarding the substance of the written communications identified in the Summary Judgment Motion or the circumstances under which they were sent.  Rather, he argued that there were material "issues" in dispute as to whether the disclaimer language "insulate[d]" 21st Mortgage from liability for discharge injunction violations.  Additionally, he contended that any mitigating effect of the bankruptcy disclaimers was offset by the numerous other "demands for payment" made by 21st Mortgage, such as the Cash-for-Keys Letter, the Right to Cure Notice, and the State Court Pleading.

In support of his Objection, Mr. Kirby submitted two (almost identical) affidavits of his counsel, Attorney Logan,[15] which primarily listed the communications prepared and/or sent by 21st Mortgage or its counsel, including the Cash-for-Keys Letter, the State Court Pleading, and 21st Mortgage's internal mortgage servicing notes.  Mr. Kirby also submitted his own affidavit with no exhibits attached.  That affidavit was notarized and provided, in its entirety:

I, Gregory Kirby, hereby state and affirm, under penalties of perjury, the following:

1.  I received multiple communications from 21st Mortgage after my bankruptcy discharge that asked for money.

2.  My wife and I received a letter from Attorney Dominguez offering to waive a mortgage deficiency in exchange for consenting to foreclosure judgment.

3.  Attorney Dominguez's letter was confusing and upsetting to me and my family because we believed we had discharged our personal duties to pay the mortgage in our bankruptcy.

---

[14]  Although Mr. Kirby specifically identified some of the communications, he did not identify the majority of the post-discharge communications by date or description.

[15]  The first affidavit was stated "under pains and penalty of perjury," but was not notarized, and the second was acknowledged by an attorney admitted to practice in Maine.  It was dated October 20, 2017, but indicated that Attorney Logan appeared before the acknowledging attorney on October 19, 2017.

      4.  My wife and I received a pleading in the foreclosure suggesting that we
      remained obligated to pay 21st Mortgage's legal fees, after the bankruptcy.

In his response to the Defendant's Statement of Material Facts, Mr. Kirby admitted all of the

material facts as set forth by 21st Mortgage, but stated that the bankruptcy disclaimers were not

"prominent."  He also filed an Opposing Statement of Material Facts, which mirrored the

averments contained in Attorney Logan's affidavit and primarily cited Attorney Logan's

affidavit for evidentiary support.

      **A.**      **The Bankruptcy Court's Order and Decision**

      On June 26, 2018, the bankruptcy court entered the Order granting the Summary

Judgment Motion, and also issued an accompanying written decision.  See Kirby v. 21st Mortg.

Corp. (In re Kirby), 589 B.R. 456 (Bankr. D. Me. 2018).

      The bankruptcy court articulated the discharge injunction standard under § 524(a)(2) as

follows: "In order to prove a violation of the discharge injunction, a debtor must show that the

defendant (1) had notice of the discharge, (2) intended the actions which violated the discharge,

and (3) acted in a way that improperly coerced or harassed the debtor."  Id. at 463 (citing Bates

v. CitiMortgage, Inc., 844 F.3d 300, 304 (1st Cir. 2016)).  Noting there was no dispute that 21st

Mortgage received notice of Mr. Kirby's discharge and intended the post-discharge actions

which allegedly violated the discharge injunction, the court stated that "the only unresolved

question is whether this conduct was 'improperly coercive or harassing under an objective

standard.'"  Id. at 464.  Examining each of the post-discharge communications sent by 21st

Mortgage, the court held that none of the post-discharge communications were improperly

"coercive" or "harassing."  See id. at 469.

With regard to the mortgage statements, the bankruptcy court observed that they "might be confusing to a layperson" as they stated an amount due and a due date, that late fees would be added if payment was not made, and that they were an attempt to collect a debt. Id. at 466. The court concluded, however, that the bankruptcy disclaimers adequately informed the recipient that 21st Mortgage was not attempting to collect a debt from the recipient or to hold the recipient personally responsible for the debt if he had been discharged in bankruptcy. Id. The court also found it compelling that: (1) 21st Mortgage sent the statements to Mr. Kirby's counsel, rather than to Mr. Kirby, "during the course of ongoing loan modification negotiations"; (2) 21st Mortgage stopped sending mortgage statements immediately upon receiving the Cease and Desist Letter; and (3) Mr. Kirby's counsel did not send the Cease and Desist Letter until after the mediation process concluded, which indicated "he did not perceive the statements to be any danger or threat to his client." Id. at 466. Under these circumstances, the bankruptcy court ruled, the mortgage statements did "not constitute discharge injunction violations." Id.

The court similarly concluded that the Loss Mitigation Letters, the Short Sale Letter, the ARM Notice, and the Escrow Account Disclosure did not violate the discharge injunction because they contained bankruptcy disclaimers, were sent to Mr. Kirby's counsel, and were sent during settlement negotiations. Id. at 466-67.

As to the Cash-for-Keys Letter, the bankruptcy court determined that the letter was "inadmissible" because it was only before the court by way of Mr. Kirby's and Attorney Logan's affidavits. The court ruled that those affidavits were "defective" because they were not based on the affiants' personal knowledge and because Attorney Logan's affidavits were not properly notarized. Id. at 467-68. Consequently, the court declined further consideration of the Cash-for-Keys Letter. Id.

12

Lastly, the bankruptcy court considered the Right to Cure Notice, stating that the "vast majority" of the notice contained information that a foreclosing mortgagee must, under Maine law, include in a right to cure letter. Id. at 468 (citing, among other things, Me. Rev. Stat. Ann. tit. 14, § 6111(1-A)). Because strict compliance with the statutory requirements is required for a valid foreclosure, the court concluded, 21st Mortgage was "required" to send the Right to Cure Notice before foreclosing on the Brewer Property and, therefore, it did not violate the discharge injunction. Id.

> Based on the foregoing, the bankruptcy court concluded:
>
> 21st Mortgage did communicate with Mr. Kirby and his wife following the entry of a discharge in his bankruptcy case[ ]. However, the vast majority of the written communications which were properly presented to the court on 21st Mortgage's motion for summary judgment were sent to Mr. Kirby's bankruptcy counsel and given the context of those communications they do not objectively constitute coercive or harassing actions in violation of the protections of the discharge injunction. Of the two communications which were sent directly to the Kirbys, only one—the [Right to Cure Notice]—was appropriate for this court to consider upon the motion for summary judgment. For the reasons set forth above, the [Right to Cure Notice] was not a violation of the discharge injunction either. Therefore, 21st Mortgage's motion for summary judgment will be granted.

Id. at 469.

Mr. Kirby timely filed a notice of appeal with respect to the Order.

## POSITIONS OF THE PARTIES

**I.    Mr. Kirby**

Mr. Kirby argues that the bankruptcy court erred in granting summary judgment in favor of 21st Mortgage because: (1) there were genuine issues of material fact as to the coercive nature of the post-discharge correspondence; and (2) 21st Mortgage failed to establish that its post-discharge correspondence did not violate the discharge injunction as a matter of law. He claims to have raised genuine issues of material fact through Attorney Logan's affidavits that identified

the many communications from 21st Mortgage, evidencing "a pattern of coercive behavior," and maintains that the bankruptcy court erroneously deemed the affidavits to be inadmissible.

He further asserts that the bankruptcy court erroneously determined that all of the communications had bankruptcy disclaimers, and argues that any mitigating effect of the bankruptcy disclaimers was offset by the numerous other "demands for payment" made by 21st Mortgage. According to Mr. Kirby, the "cumulative effect" of all the communications sent by 21st Mortgage was coercive and harassing, even if the individual communications alone were not.

## II.    21st Mortgage

21st Mortgage counters that its post-discharge communications did not violate the discharge injunction because they were sent: (1) to comply with Maine state law; (2) to engage in "good faith mediation negotiations"; and/or (3) in furtherance of "routine mortgage servicing and foreclosure processing." Moreover, it notes that the majority of its communications were sent to Mr. Kirby's counsel, rather than to Mr. Kirby, and all but one communication included bankruptcy disclaimers indicating that Mr. Kirby was not personally liable for any discharged debt. Therefore, 21st Mortgage contends, when considering the totality of the circumstances, the bankruptcy court correctly ruled that the post-discharge communications did not improperly harass Mr. Kirby for, or attempt to coerce him into, payment of a discharged debt.

## <u>APPELLATE JURISDICTION</u>

## I.    Finality

We may hear appeals from final orders. <u>See</u> 28 U.S.C. § 158(a)(1) and (b)(1); <u>see also</u> <u>Bullard v. Blue Hills Bank</u>, 135 S. Ct. 1686, 1692 (2015) (discussing the Panel's jurisdiction to

hear bankruptcy appeals under 28 U.S.C. § 158(a)); Fleet Data Processing Corp. v. Branch (In re Bank of New Eng. Corp.), 218 B.R. 643, 645 (B.A.P. 1st Cir. 1998) (citing 28 U.S.C. § 158(a)(1)).  Generally, an order granting a motion for summary judgment is a final order. Bullard, 135 S. Ct. at 1694; see also Encanto Rests., Inc. v. Aquino Vidal (In re Cousins Int'l Food, Corp.), 565 B.R. 450, 458 (B.A.P. 1st Cir. 2017) ("An order granting summary judgment is a final order where no counts against any defendants remain.") (citation omitted) (internal quotations omitted).  Here, the bankruptcy court granted summary judgment in favor of 21st Mortgage on both counts of the complaint.  Therefore, the Order is final and we have jurisdiction to hear this appeal.[16]

## II.    Scope of the Appeal

When assessing our jurisdiction, we must also identify the scope of the appeal.  In his statement of the issues on appeal, Mr. Kirby asserted that the bankruptcy court erred in granting summary judgment as to both counts of his complaint.  On appeal, however, he does not challenge, or even address, the bankruptcy court's grant of summary judgment as to the alleged violations of the FDCPA.  Consequently, he has waived that issue.  See Canning v. Beneficial Me., Inc. (In re Canning), 706 F.3d 64, 70 n.7 (1st Cir. 2013) (stating that appellant waived issue by failing to raise it in its brief); Tower v. Leslie-Brown, 326 F.3d 290, 299 (1st Cir. 2003) ("[W]e have made it abundantly clear that failure to brief an argument does, in fact, constitute waiver for purposes of appeal.") (citation omitted).  Therefore, our review in this appeal is

---

[16]  Although the bankruptcy court did not memorialize the judgment in a separate document as required by Rule 58(a), it is clear from the record that the Order was the court's final decision in the case and 21st Mortgage did not object to the filing of an appeal in the absence of a separate judgment.  Under these circumstances, we conclude that the Order is final and that we have jurisdiction.  See Bankers Trust Co. v. Mallis, 435 U.S. 381, 387 (1978) (ruling that the separate-document requirement may be waived where the parties are not misled and the lower court "evidenced its intent that the opinion and order from which an appeal was taken would represent the final decision in the case").

limited to the grant of summary judgment as to Count I—the alleged discharge injunction violations.

## STANDARD OF REVIEW

The standard of review on appeal from a grant of summary judgment is de novo. <u>Prime Healthcare Servs.–Landmark LLC v. United Nurses & Allied Prof'ls, Local 5067</u>, 848 F.3d 41, 45 (1st Cir. 2017); <u>United Paperworkers Int'l Union, Local 14 v. Int'l Paper Co.</u>, 64 F.3d 28, 31 (1st Cir. 1995) ("Because the summary judgment standard requires the trial court to make a legal determination rather than to engage in factfinding, appellate review is plenary.") (citation omitted); <u>Noviello v. City of Bos.</u>, 398 F.3d 76, 84 (1st Cir. 2005) ("An order granting summary judgment engenders de novo review.") (citation omitted).

## DISCUSSION

### I.    The Summary Judgment Standard

"In bankruptcy, summary judgment is governed in the first instance by Bankruptcy Rule 7056" which "incorporates into bankruptcy practice the standards of Rule 56 of the Federal Rules of Civil Procedure." <u>Desmond v. Varrasso (In re Varrasso)</u>, 37 F.3d 760, 762 (1st Cir. 1994) (citation omitted); <u>see also</u> <u>Soto-Rios v. Banco Popular de P.R.</u>, 662 F.3d 112, 115 (1st Cir. 2011). Summary judgment should only be granted "when no genuine issue of material fact exists and the movant has successfully demonstrated an entitlement to judgment as a matter of law." <u>In re Varrasso</u>, 37 F.3d at 763. "[A]n issue is 'genuine' if the record permits a rational factfinder to resolve that issue in favor of either party," and "[a] fact is 'material' if its existence or nonexistence has the potential to change the outcome of the suit." <u>Harrington v. Simmons (In re Simmons)</u>, 810 F.3d 852, 857 (1st Cir. 2016) (citation omitted) (internal quotations omitted).

A party asserting that a fact can be genuinely disputed "must support the assertion by [ ] citing to . . . materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials[.]" Fed. R. Civ. P. 56(c)(1)(A). Finally, when considering a motion for summary judgment, the court must view the record in the light most favorable to the nonmoving party and give that party the benefit of all reasonable inferences in its favor. Johnson v. Univ. of P.R., 714 F.3d 48, 52 (1st Cir. 2013) (citation omitted).

A party moving for summary judgment has the initial burden of demonstrating that there are no material facts that are genuinely disputed and that the movant is entitled to judgment as a matter of law. Razzaboni v. Schifano (In re Schifano), 378 F.3d 60, 66 (1st Cir. 2004) (citations omitted). In meeting this burden, the moving party "ordinarily must support the motion with affidavits or other materials of evidentiary quality." Fed. Refinance Co. v. Klock, 352 F.3d 16, 30 (1st Cir. 2003) (citing Plumley v. S. Container, Inc., 303 F.3d 364, 368 (1st Cir. 2002)). "The burden of production then shifts to the nonmovant to show that a genuine issue looms." Id. (citing Garside v. Osco Drug, Inc., 895 F.2d 46, 48 (1st Cir. 1990)). "The protocol differs, however, as to issues on which the nonmovant bears the burden of proof." Id. "As to such issues, the movant is not obliged to make an initial evidentiary showing." Id. "Rather, it is incumbent upon the nonmovant to demonstrate, in the first instance, that specific facts exist sufficient to create an authentic dispute." Id. (citation omitted).

## II.     The Discharge Injunction and its Limitations

Section 524(a)(2) provides that a discharge under the Bankruptcy Code "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor . . . ."

17

11 U.S.C. § 524(a)(2); see also Ramírez Rosado v. Banco Popular de P.R. (In re Ramírez

Rosado), 561 B.R. 598, 605 (B.A.P. 1st Cir. 2017) (stating § 524 "establishes the discharge

injunction") (citation omitted). "The injunction affords honest but unfortunate debtors [ ] a

'fresh start' from the burdens of personal liability for unsecured pre[-]petition debts and thus

advances the overarching purpose of the Bankruptcy Code." In re Canning, 706 F.3d at 69

(citing Marrama v. Citizens Bank of Mass., 549 U.S. 365, 367 (2007); Pratt v. Gen. Motors

Acceptance Corp. (In re Pratt), 462 F.3d 14, 17-18 (1st Cir. 2006)). "[T]he scope of the

injunction is broad, and bankruptcy courts may enforce it through [ ] § 105 . . . ." Id. (citing In re

Pratt, 462 F.3d at 17, 21).

 "The burden of proof is on the former debtor to establish by clear and convincing

evidence that [the] creditor violated the post-discharge injunction." In re Ramírez Rosado,

561 B.R. at 605 (citation omitted) (internal quotations omitted). To prevail on a claim for

violations of § 524(a)(2), a debtor must show that the creditor: (1) "ha[d] notice of the

discharge"; (2) "intend[ed] the actions which violated the discharge"; and (3) "act[ed] in a way

that improperly coerc[ed] or harass[ed] the debtor." Bates, 844 F.3d at 304 (quoting Best v.

Nationstar Mortg. LLC (In re Best), 540 B.R. 1, 9 (B.A.P. 1st Cir. 2015)). In this circuit, courts

"assess whether conduct is improperly coercive or harassing under an objective standard—the

debtor's subjective feeling of coercion or harassment is not enough." Id. (citations omitted).

"While there is no specific test to determine whether a creditor's conduct meets this objective

standard, the circuit considers the facts and circumstances of each case, including factors such as

the immediateness of any threatened action and the context in which a statement is made." In re

Ramírez Rosado, 561 B.R. at 605 (citing Bates, 844 F.3d at 304) (internal quotations omitted).

"An action is coercive when it is tantamount to a threat, or places the debtor between a rock and

a hard place in which he would lose either way." Id. (citing Diamond v. Premier Capital, Inc. (In re Diamond), 346 F.3d 224, 227 (1st Cir. 2003)) (internal quotations omitted).

Although broad, the discharge injunction has its limitations. It does not prohibit "every communication between a creditor and debtor—only those designed to collect, recover or offset any [discharged] debt as a personal liability of the debtor." Id. at 605-06 (quoting In re Best, 540 B.R. at 9). In addition, the discharge injunction does not enjoin a secured creditor from recovering on valid pre-petition liens, "which, unless modified or avoided, ride through bankruptcy unaffected and are enforceable in accordance with state law." In re Canning, 706 F.3d at 70 (citation omitted). "[A] secured creditor may take any appropriate action to enforce a valid lien surviving the discharge, as long as the creditor does not pursue in personam relief against the debtor." In re Best, 540 B.R. at 9 (citation omitted) (internal quotations omitted).[17]

The question of whether 21st Mortgage's communications violated the discharge injunction is a "particularly fact-intensive inquiry" and, therefore, no bright line rule exists. Caldwell v. Redstone Fed. Credit Union, No. 2:15-cv-01923-JHE, 2018 WL 3518466, at *13 (N.D. Ala. July 20, 2018) (citation omitted); see also Zotow v. Johnson (In re Zotow), 432 B.R. 252, 258 (B.A.P. 9th Cir. 2010) ("Whether a communication is a permissible or prohibited one is a fact-driven inquiry which makes any bright line test unworkable.") (citations omitted); In re Culpepper, 481 B.R. 650, 658 (Bankr. D. Or. 2012) ("Because of the variety of situations in which alleged violations of the discharge injunction can arise, such cases are very fact dependent."). Case law, however, is instructive in determining whether a creditor's communications violate the discharge injunction. Because the discharge injunction only

---

[17] Section 524(j), which provides a specific exception to the discharge injunction for certain acts taken by mortgagees, does not apply here as the Brewer Property was not Mr. Kirby's principal residence at the time the post-discharge communications were sent. See 11 U.S.C. § 524(j); see also Best, 540 B.R. at 9.

prohibits those communications "designed to collect, recover or offset any [discharged] debt as a personal liability of the debtor," In re Ramírez Rosado, 561 B.R. at 606 (citation omitted), correspondence that is "informational in nature" does not violate the automatic stay or discharge injunction. Elliott v. PHH Mortg. Corp., No. 15-CV-01221(BKS), 2017 WL 10153593, at *5 (N.D.N.Y. Mar. 3, 2017); see also In re Zotow, 432 B.R. at 259; Mele v. Bank of Am. Home Loans (In re Mele), 486 B.R. 546, 557 (Bankr. N.D. Ga. 2013) (analyzing the "overall tenor" of the correspondence to determine whether it was informational or sought to collect a debt personally from the debtor).

"The 'common factor' in cases where courts 'find a violation of either the automatic stay or the discharge injunction by a mortgagee for loan related correspondence' is 'a clear demand for payment of a pre[-]petition debt accompanied by coercion in the form of threatened action or some other consequence for nonpayment, or harassment to induce the debtor to pay.'" Elliott, 2017 WL 10153593, at *5 (quoting In re Bell, No. 14-60510, 2014 WL 6913509, at *3 (Bankr. N.D.N.Y. Nov. 13, 2014)); see also In re Zotow, 432 B.R. at 258-59 (collecting cases). When evidence of coercion or harassment is present, courts typically find that a bankruptcy disclaimer is ineffective to insulate the creditor from liability. See, e.g., In re Youngkin, No. 12-08391-8-RDD, 2014 WL 789117, at *6 (Bankr. E.D.N.C. Feb. 27, 2014) (concluding that despite disclaimer, the mortgagee's monthly mortgage statement violated the discharge injunction because it was "nothing more than a cleverly disguised form meant to induce payment of funds [from the debtor]"); Todt v. Ocwen Loan Servicing, LLC (In re Todt), 567 B.R. 667, 679 (Bankr. D.N.H. 2017) (stating that "a pro forma bankruptcy disclaimer is not a 'get out of jail free' card that can absolve a creditor of liability for a pattern of conduct that is inconsistent with the terms of the disclaimer itself"). Courts have also concluded, however, that communications do not

20

violate the discharge injunction if they include an "unambiguous" disclaimer that the
communication is not an attempt to collect in personam, but rather, only an attempt to assert
the creditor's *in rem* rights against collateral. See In re Bell, 2014 WL 6913509, at *4 (stating
that although mortgage statement indicated a total amount due, a due date, and the possibility of
a late charge, it included "an unambiguous and conspicuously placed disclaimer in bold
typeface" that expressly advised debtors that it was not an attempt to collect a debt against them
personally but "strictly for information purposes only").[18]

The First Circuit also requires courts to look beyond the particular content of
communications and consider whether the circumstances and context in which the
communications occurred "give rise to an inference of coercion." See Bates, 844 F.3d at 306.
For example, in Bates, the First Circuit upheld the bankruptcy court's ruling that Internal
Revenue Service ("IRS") 1099-A forms which indicated (incorrectly) that the debtors were
personally liable for a debt did not violate the discharge injunction. Id. at 307. The First Circuit
determined that the IRS forms merely provided information about the potential tax implications
of a foreclosure; even if the lender had incorrectly "checked the box" indicating that the debtors
were personally liable for the debt, that action did not "create a demand for payment." Id. at
304-05. It determined that neither the lender's failure to correct the forms, nor a telephone
conversation between the debtors and the lender in which the lender incorrectly stated that the

---

[18] See also In re Best, 540 B.R. at 11 (stating there was no discharge injunction violation where
disclaimers made it clear that the creditor was not attempting to collect a debt because the debtor had
received a discharge); Navarro v. Banco Popular de P.R. (In re Navarro), 563 B.R. 127, 146-47 (Bankr.
D.P.R. 2017) (holding that mortgage statements did not violate the discharge injunction because they
contained disclaimers that specifically acknowledged the debtor's bankruptcy filing, stated they were not
attempts to collect debts, and were sent for informational purposes only); Lemieux v. America's Servicing
Co. (In re Lemieux), 520 B.R. 361, 366 (Bankr. D. Mass. 2014) (concluding that mortgage statements did
not violate discharge where "[e]ven a hypothetical unsophisticated consumer" would understand that the
statements were not attempts to collect a debt).

debt was not discharged in bankruptcy violated the discharge injunction.  Id. at 306.  In making

this determination, the First Circuit considered whether "all of the circumstances surrounding the

1099-A Forms" gave rise to an "inference of coercion," and concluded that they did not.  Id.

## III.  Analysis

Employing the summary judgment and discharge injunction standards set forth above,

we now consider: (1) whether Mr. Kirby demonstrated that there were genuine issues of material

fact which precluded the entry of summary judgment as to the alleged discharge injunction

violations; and (2) whether the bankruptcy court erred in ruling that 21st Mortgage's post-

discharge correspondence did not violate the discharge injunction as a matter of law.

### A.  Whether Mr. Kirby Demonstrated Genuine Issues of Material Fact

In his Objection, Mr. Kirby asserted there were "factual disputes" precluding summary

judgment as to: whether the post-discharge communications contained "prominent" bankruptcy

disclaimers, whether the Cash-for-Keys Letter was an "offer [to] waive[ ] a discharged debt,"

and whether communications sent after the Cease and Desist Letter "exacerbate [21st

Mortgage]'s conduct."  None of these alleged "factual disputes" are questions of *material fact* –

but merely legal arguments in support of his contention that the communications were coercive

and harassing.[19]  The underlying factual record—the content of the communications and to

whom and when they were sent—are not in dispute.  Likewise, even if Mr. Kirby's affidavit was

admissible, the content of the affidavit does not raise any factual disputes.  No additional

documents were attached to the affidavit, and whether Mr. Kirby was "confus[ed] and upset[ ]"

by 21st Mortgage's communications is not the question.  The only question is whether, under the

---

[19]  The alleged factual dispute as to whether the bankruptcy disclaimers were "prominent" did not give
rise to an issue of "material" fact—it did not "change the outcome of the suit."  See In re Simmons, 810
F.3d at 857.

objective standard articulated by the First Circuit, the record supports a finding that the discharge injunction was violated. Therefore, Mr. Kirby's so-called "factual disputes" do not present a trial-worthy issue.

Although Mr. Kirby pointed to no other alleged factual disputes, we would be remiss in failing to consider whether there is a genuine factual dispute as to the number of communications sent. 21st Mortgage asserted that it sent nine post-discharge mortgage statements, but in his Objection, Mr. Kirby stated that 21st Mortgage "printed and apparently sent . . . 22 monthly statements." At first blush, this contradiction seems to create a factual dispute. But Mr. Kirby offered no evidentiary support for this assertion, as required by Rule 56(c)(1).[20] Despite his acknowledgment in his Objection to the Summary Judgment Motion that discovery was complete, he did not submit copies of the additional 13 monthly statements 21st Mortgage allegedly sent. Instead, he offered as part of the summary judgment record only 21st Mortgage's computerized "collection notes" which reflected that additional mortgage statements were internally "printed."[21] Therefore, Mr. Kirby failed to demonstrate a genuine factual dispute regarding the number of post-discharge mortgage statements.[22] In sum, Mr. Kirby failed to present "specific facts, in suitable evidentiary form, to establish the presence of a trialworthy

---

[20] Rule 56(c)(1) provides that a party asserting that a fact can be genuinely disputed "must support the assertion by . . . citing to . . . materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1).

[21] 21st Mortgage's staff attorney explained in an affidavit that "printed" statements were "internally printed" to their electronic system, but were not physically printed or sent to either Mr. Kirby or his counsel. Mr. Kirby did not offer any contradictory evidence which would give rise to a disputed fact.

[22] Similarly, Mr. Kirby asserts *in his appellate brief* that 21st Mortgage sent a mortgage statement in January 2016 (several months after the Cease and Desist Letter), but he did not present that mortgage statement or any evidence in the summary judgment proceedings that 21st Mortgage sent any such mortgage statement. Therefore, there was no disputed fact before the bankruptcy court as to this issue.

issue" which would have precluded the entry of summary judgment.  See Brooks v. AIG

SunAmerica Life Assurance Co., 480 F.3d 579, 586 (1st Cir. 2007) (citation omitted) (emphasis

omitted).  The only remaining question is whether, on the undisputed facts, 21st Mortgage was

entitled to judgment as a matter of law.

#### B.        Whether 21st Mortgage Violated the Discharge Injunction

It is undisputed on appeal that 21st Mortgage had actual knowledge that Mr. Kirby

received a discharge under § 727 and that, after receiving notice of the discharge, it sent 24

communications to Mr. Kirby or his counsel and filed a pleading in the state court foreclosure

action.  Consequently, the first two elements of the discharge injunction standard under §

524(a)(2)—that the creditor had notice of the discharge and intended the actions which violated

the discharge—are satisfied.  Our focus, therefore, is on the third element – whether, under an

objective standard and considering the facts and circumstances surrounding the communications,

the post-discharge communications improperly coerced or harassed Mr. Kirby into paying the

discharged debt.  See Bates, 844 F.3d at 306 (considering whether the circumstances and context

in which the communications occurred "give rise to an inference of coercion"); see also

Schinabeck v. Wells Fargo Bank, N.A. (In re Schinabeck), Adv. Pro. No. 11-4022, 2014 WL

5325781, at *8 (Bankr. E.D. Tex. Oct. 20, 2014) (stating that "it is appropriate in the § 524

context not only to look at each individual act, but also to examine the totality of the

circumstances surrounding the Defendant's conduct").

Here, 21st Mortgage sent 24 written communications to Mr. Kirby or his counsel during

the 26-month period following the entry of the Mr. Kirby's discharge.  Nineteen of the post-

discharge communications were sent while the parties were actively engaged in mediation to

negotiate an alternative to foreclosure.  After the conclusion of the mediation process in October

2015, 21st Mortgage and its counsel sent five additional written communications, but ceased all
correspondence after the foreclosure sale in February 2017.

Although Mr. Kirby argues that the sheer volume of the communications amounts to
coercion, even if the individual communications do not, the surrounding circumstances and
context in which the communications were sent eliminated any coercive or harassing effect of
the post-discharge communications.

Because of the unique circumstances presented by the parties' involvement in the
mediation process, we consider the post-discharge communications in two categories—those that
were sent during the mediation period and those that were sent after the conclusion of the
mediation period.

### 1.     Communications Sent During Mediation

The facts and circumstances surrounding the 19 written communications sent to Mr.
Kirby in the care of his counsel during the mediation period—nine mortgage statements, the
ARM Notice, the PMI Disclosure, and eight Loss Mitigation Letters—are clear from the record
and are undisputed.  Mr. Kirby wanted to retain the Brewer Property and, therefore, voluntarily
initiated and participated in the state court-sponsored mediation program in order to explore
alternatives to foreclosure.  Although his requests were ultimately denied, Mr. Kirby actively
pursued loan modification and other loss mitigation options with 21st Mortgage.  At no time
during the nearly year-long mediation period did Mr. Kirby or his attorney allege that 21st
Mortgage's correspondence violated the discharge injunction or ask 21st Mortgage to cease its
written communications.  Attorney Logan waited until the conclusion of the mediation to send
the Cease and Desist Letter, in which he only alleged that one of the 19 communications sent

during the mediation period (a mortgage statement) violated the discharge injunction.  Upon

receipt of the Cease and Desist Letter, 21st Mortgage immediately stopped sending the monthly

mortgage statements and the only communications sent thereafter were either informational in

nature or related to the foreclosure process.

In addition, all of the post-discharge communications sent during the mediation process

were sent to Mr. Kirby's counsel and not directly to Mr. Kirby, and all but one of them contained

unambiguous bankruptcy disclaimers informing Mr. Kirby that if he had received a bankruptcy

discharge, 21st Mortgage was not attempting to collect a debt from him personally and the

correspondence was for informational purposes only.  The ARM Notice, which did not have a

bankruptcy disclaimer, merely informed Mr. Kirby of changes to the interest rate on his

adjustable rate mortgage.  Communications that do not contain a bankruptcy disclaimer are not

per se violations of the discharge injunction where it is evident from the circumstances that there

is no coercion or harassment.  See In re Gill, 529 B.R. 31, 41 (Bankr. W.D.N.Y. 2015) ("[T]he

absence of disclaimer language in a communication to a debtor is not a *per se* violation of the

discharge injunction, where there is no evidence of coercion or harassment.") (citing Whitaker v.

Bank of Am. (In re Whitaker), Adv. Pro. No. 13-5008, 2013 WL 2467932, at *8 (Bankr. E.D.

Tenn. June 7, 2013)).  Such is the case here.

Although neither the inclusion of a bankruptcy disclaimer nor sending the letters to

counsel, standing alone, insulates 21st Mortgage from liability, these facts become more

compelling where, as here, the parties were also engaged in extensive efforts to mediate an

alternative to foreclosure.[23]  Not only were the parties participating in mediation through the

---

[23]  We are not suggesting that sending post-discharge communications to counsel rather than directly to
the debtor will automatically eliminate their coercive effect.  See In re Diamond, 346 F.3d at 228 ("The
fact that the statement was made by [creditor']s attorney to [debtor']s attorney does not detract from its

state court foreclosure diversion program, but Mr. Kirby also initiated communications with

21st Mortgage when he submitted requests for a loan modification.  Several courts have

recognized that when a debtor, after the entry of his discharge, initiates communications with

the creditor in order to explore alternatives to foreclosure so that he can retain the property,

certain communications from the creditor (including those designed to inform the debtor of

the payment amounts necessary to bring the mortgage current) are "logical" and do not violate

the discharge injunction.  See Ladebush v. Beneficial N.H., Inc. (In re Ladebush), Adv. Pro.

No. 13-1154-JMD, 2016 WL 675580, at *9 (Bankr. D.N.H. Feb. 18, 2016) (determining that a

creditor's communications seeking payment from the debtors were not "improperly coercive"

as the debtors had "evidence[d] a desire to stay in the Property and attempt to resolve the

arrearage"); Manning v. CitiMortgage, Inc. (In re Manning), 505 B.R. 383, 387 (Bankr. D.N.H.

2014) (determining that, where the debtor initiated post-discharge contact with the creditor in

an effort to avoid foreclosure and retain his property, the creditor's request that the debtor

become current on his mortgage and sign a reaffirmation agreement did not violate the discharge

injunction); In re Culpepper, 481 B.R. at 658 (stating that a debtor who filed several post-

discharge applications to obtain a loan modification "opened the door to further communications

with [the creditor]").  As one court observed, where a debtor fails to reaffirm the debt, he will be

"forced to deal with the [creditor] post-discharge" if he wants to retain his property.  In re

Manning, 505 B.R. at 388.

---

coerciveness."); but see In re Reuss, No. DT 07-05279, 2011 WL 1522333, at *2 (Bankr. W.D. Mich.
Apr. 12, 2011) (stating that sending letter to counsel rather than to the debtor himself "undercuts any
suggestion that [the creditor] intended to pressure the [d]ebtor").  Rather, it is but one factor to be
considered when examining the totality of the circumstances of the post-discharge communications.

The totality of the circumstances presented in the record surrounding the post-discharge communications serves to eliminate any alleged coercive effect of the communications that were sent during the mediation process. We conclude, therefore, that the bankruptcy court did not err in ruling that the nine mortgage statements, the ARM Notice, the PMI Disclosure, and the Loss Mitigation Letters did not violate the discharge injunction.

### 2. Post-Mediation Communications

The record reflects that, following the failure of mediation and loss mitigation and 21 Mortgage's receipt of the Cease and Desist Letter, 21st Mortgage or its counsel sent the following: (1) the Escrow Account Disclosure; (2) another PMI Disclosure; (3) the Cash-for-Keys Letter; (4) the Right to Cure Notice; and (5) the State Court Pleading. We examine each communication in turn and conclude that none of them coerced or harassed Mr. Kirby to pay a discharged debt.

### (a) Escrow Account Disclosure

The Escrow Account Disclosure informed Mr. Kirby of the current and projected yearly escrow account activity. Although it contained new payment information and a payment due date, it did not indicate that it was an attempt to collect a debt, make any demand for payment, or threaten any adverse consequences. It was sent to Mr. Kirby's counsel, rather than to Mr. Kirby, and it contained an unambiguous bankruptcy disclaimer. We conclude, therefore, that the record does not establish that the Escrow Account Disclosure improperly coerced and harassed Mr. Kirby in violation of the discharge injunction. See, e.g., In re Whitmarsh, 383 B.R. 735, 736 (Bankr. D. Neb. 2008) (stating that notice informing debtors of the status of their escrow account did not violate the discharge injunction); see also In re Ramírez Rosado, 561 B.R. at 605

(stating that discharge injunction only prohibits communications designed to collect a debt as a personal liability of the debtor).

### (b)     PMI Notice

The PMI Notice informed Mr. Kirby of his rights under federal law regarding the cancellation or termination of his private mortgage insurance. It was purely informational in nature and did not demand payment, request that Mr. Kirby take any action, or threaten any adverse consequences. It was also sent to Mr. Kirby's counsel, rather than to Mr. Kirby, and contained an unambiguous bankruptcy disclaimer. We agree with the holding in a similar case, In re Youngkin, 2014 WL 789117, at *5, where the bankruptcy court held that a private mortgage insurance disclosure which contained a bankruptcy disclaimer did not violate the discharge injunction. We conclude, therefore, that the record does not establish that the PMI Notice improperly coerced and harassed Mr. Kirby in violation of the discharge injunction.

### (c)     The Cash-for-Keys Letter

Turning to the Cash-for-Keys Letter, we must first consider whether it is properly before us in this appeal. The bankruptcy court ruled that the Cash-for-Keys Letter was inadmissible as it was submitted only as an attachment to Attorney Logan's affidavits, which affidavits the court ruled were defective because they were not properly notarized. While it is true that the affidavits were not properly notarized, "28 U.S.C. § 1746 allows for 'unsworn declarations under penalty of perjury' to support any matter that legally requires an affidavit to support it." Uncle Henry's Inc. v. Plaut Consulting, Inc., 240 F. Supp. 2d 63, 69 (D. Me. 2003) (citation omitted). Because Attorney Logan's affidavits were made "under pains and penalties of perjury," the defective jurats did not render them inadmissible.

29

The Cash-for-Keys Letter as submitted, however, suffers from a separate defect.  The version provided by Attorney Logan as an exhibit to the complaint and as part of the summary judgment documents was incomplete in that he failed to attach the referenced draft consent judgment of foreclosure and order of sale.  Although the failure to produce a complete copy of the letter does not render it inadmissible, the incomplete letter carries little evidentiary weight in the absence of the documents referenced therein.  See Greener v. Cadle Co., 298 B.R. 82, 92 (N.D. Tex. 2003) ("[A]rguments regarding the accuracy or incompleteness of the document go to the weight of the evidence, not its admissibility.").  Even if admissible, however, inasmuch as the portion of the letter that was submitted acknowledged that Mr. Kirby had received a discharge in bankruptcy, we conclude that it does not support a determination that the discharge injunction was violated.

### (d)    The Right to Cure Notice

The bankruptcy court ruled that most of the Right to Cure Notice constituted information that a foreclosing mortgagee must, under Maine law, include in a default or right to cure letter.  See Me. Rev. Stat. Ann. tit. 14, § 6111(1); Bordetsky v. JAK Realty Tr., 157 A.3d 233, 237 (Me. 2017).  We need not address whether the Maine statute applies in this case, however, as we conclude that the plain language of the Right to Cure Notice demonstrates that it was an act to enforce 21st Mortgage's foreclosure rights rather than an attempt to collect a debt as a personal liability.  The notice informed Mr. Kirby of the amount of the default, that he could cure the default by making certain payments, and that 21st Mortgage intended to foreclose on the mortgage if he did not cure the default.  Moreover, the Right to Cure Notice contained an unambiguous bankruptcy disclaimer.  Under these circumstances, the Right to Cure Notice was a permissible communication by a secured creditor in reference to the enforcement of its rights

against a property *in rem*, rather than personally against Mr. Kirby. See Bibolotti v. Am. Home Mortg. Servicing, Inc., No. 4:11-CV-472, 2013 WL 2147949, at *10 (E.D. Tex. May 15, 2013) (describing an analogous letter as "precisely the type of communication the discharge injunction allows secured creditors to use in order to enforce their rights against a property *in rem*, rather than personally against a debtor") (citations omitted). We conclude, therefore, that the record does not establish that the Right to Cure Notice improperly coerced and harassed Mr. Kirby in violation of the discharge injunction.

### (e)     The State Court Pleading

Finally, Mr. Kirby argues that the bankruptcy court erred by failing to consider whether the filing of the State Court Pleading violated the discharge injunction, specifically pointing to the statement in the State Court Pleading that "Defendants are already liable for costs and attorney's fees associated with the enforcement of the note and mortgage." However, as noted above, the document submitted as part of the summary judgment record included only the final page on which the allegedly objectionable language appeared, rendering it impossible to discern the precise nature of the document and the context in which this statement appeared. Mr. Kirby's failure to submit the entire pleading as part of the summary judgment record is fatal to his claim that the State Court Pleading violated the discharge injunction.[24] Therefore, any error

---

[24] Mr. Kirby argues that the entire State Court Pleading was properly before the court because 21st Mortgage produced it during discovery in response to his Request for Admissions. Mr. Kirby "overlooks the crucial point that documents do not automatically become a part of the record simply because they are the products of discovery." Hoffman v. Applicators Sales & Serv., Inc., 439 F.3d 9, 15 (1st Cir. 2006) (citation omitted). "If a party wishes the court to consider matters disclosed during discovery, he must take appropriate steps to have them included in the [summary judgment] record[.]" Id. Mr. Kirby did not offer 21st Mortgage's response as evidentiary support for his Opposing Statement of Material Facts and, therefore, it is not part of the summary judgment record. See id. Moreover, although Mr. Kirby included a complete copy of the State Court Pleading in the appellate record, in reviewing a grant of summary judgment, "we are limited to the . . . evidence available to the court at the time the motion was made." Id. at 14.

by the bankruptcy court in failing to address the State Court Pleading is harmless. We cannot conclude, based on the last page of the State Court Pleading, that its overall effect was to harass or coerce Mr. Kirby into paying a discharged debt in violation of the discharge injunction.

## **CONCLUSION**

We conclude that Mr. Kirby failed to demonstrate genuine issues of material fact which would have precluded the entry of summary judgment.  Additionally, we conclude, based on the totality of the circumstances surrounding the post-discharge communications contained in the summary judgment record, together with the substance of those communications, that Mr. Kirby did not establish that the correspondence in question, whether viewed individually or cumulatively, coerced or harassed him to pay a discharged debt in violation of the discharge injunction.  Therefore, the bankruptcy court did not err in granting summary judgment in favor of 21st Mortgage, and we **AFFIRM**.